# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

JERMAINE LEROY MALONE,

        Plaintiff,

v.                                                     Case No. 6:20-cv-1102-JRK

KILOLO KIJAKAZI,[1]
Acting Commissioner of Social
Security,

        Defendant.
_____/

## OPINION AND ORDER[2]

### I.  Status

Jermaine Leroy Malone ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of depression, chronic gout, human immunodeficiency virus ("HIV"), carpal tunnel, and plantar fasciitis.

---

[1] Kilolo Kijakazi recently became the Acting Commissioner of Social Security. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 22), filed November 4, 2020; Reference Order (Doc. No. 25), entered November 5, 2020.

See Transcripts of Administrative Proceedings (Doc. Nos. 23-24; collectively "Tr." or "administrative transcript"), both filed November 4, 2020, at 73, 85, 236.

On January 30, 2017, Plaintiff filed an application for SSI, alleging a disability onset date of October 6, 2016, Tr. at 175.[3] Plaintiff later amended his alleged onset date from October 6, 2016, see Tr. at 73, 85, to September 15, 2016, Tr. at 191. The SSI application was denied initially, Tr. at 71, 72-81 (duplicated at 1039-48), 82, 100-02, and upon reconsideration, Tr. at 83, 84-96 (duplicated at 1026-38), 97, 106-10. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and while this request was pending, on October 23, 2018, Plaintiff filed an application for DIB, alleging a disability onset date of September 15, 2016. Tr. at 191. The administrative transcript does not contain Plaintiff's DIB application.[4]

On August 14, 2019, an ALJ held a hearing, during which he heard from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See Tr. at 40-70. At the time of the hearing, Plaintiff was 46 years old. Tr. at 45 (providing date of birth). On September 5, 2019, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 18-34.

---

[3] Although actually completed on January 30, 2017, see Tr. at 175, the protective filing date of the application is listed elsewhere in the administrative transcript as November 11, 2016, see, e.g., Tr. at 73, 85, 236.

[4] The ALJ's Decision (along with the parties' filings) indicates that Plaintiff filed for DIB on October 23, 2018. Plaintiff represents that his DIB application "was escalated to the hearing level" as he already requested a hearing before an ALJ regarding his SSI application. Plaintiff's Brief (Doc. No. 28; Pl.'s Mem.), filed January 4, 2021, at 2.

Thereafter, Plaintiff requested review of the Decision by the Appeals Council, see Tr. at 172-73, and submitted additional evidence in the form of a brief authored by Plaintiff's counsel, Tr. at 4, 5; see also Tr. at 174 (brief). On May 6, 2020, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, making the ALJ's Decision the final decision of the Commissioner. On June 23, 2020, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff argues that "[t]he ALJ failed to apply the correct legal standards to the opinion of [Plaintiff]'s treating physician," Suzy Boules, M.D. Pl.'s Mem. at 12 (emphasis and some capitalization omitted). On March 3, 2021, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 29; "Def.'s Mem.") addressing Plaintiff's argument.

After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II.   The ALJ's Decision

When determining whether an individual is disabled,[5] an ALJ must

---

[5] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

3

follow the five-step sequential inquiry set forth in the Regulations, determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 20-34. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since September 15, 2016, the alleged onset date." Tr. at 20 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: [HIV] infection, generalized osteoarthritis affecting multiple joints, gout, history of deep venous thrombosis, lymphedema, hypertension, dyslipidemia, obesity, plantar fasciitis and carpal tunnel syndrome." Tr. at 21 (emphasis and citation omitted). At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed

impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 23 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform sedentary work as defined in 20 [C.F.R. §§] 404.1567(a) and 416.967(a) except he can frequently operate hand controls and handle bilaterally; occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds; frequently balance, stoop, and crouch; occasionally kneel and crawl; and occasional exposure to unprotected heights, moving mechanical parts, extreme cold, extreme heat and vibration. [Plaintiff] needs to use a single-handed cane during all periods of standing and walking.

Tr. at 23-24 (emphasis omitted).

At step four, the ALJ relied on the testimony of the VE and found that Plaintiff "is capable of performing past relevant work as a teleworker." Tr. at 32 (emphasis and citation omitted). The ALJ made alternative findings for the fifth and final step of the sequential inquiry, and after considering Plaintiff's age ("43 years old . . . on the alleged disability onset date"),[6] education ("at least a high school education"), work experience, and RFC, the ALJ again relied on the testimony of the VE and found that "there are other jobs that exist in significant numbers in the national economy that [Plaintiff] also can perform," Tr. at 33 (citations omitted), such as "Charge Account Clerk," "Telephone Quotation Clerk," and "Document Preparer," Tr. at 33-34. The ALJ concluded

---

[6] The ALJ also noted that Plaintiff "subsequently changed age category to a younger individual age 45-49." Tr. at 33 (citation omitted).

that Plaintiff "has not been under a disability . . . from September 15, 2016, through the date of th[e D]ecision." Tr. at 34 (emphasis and citation omitted).

## III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against

the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.   Discussion

### A.   Parties' Arguments

Plaintiff argues that "the ALJ failed to apply the correct legal standards to the opinion of" Dr. Boules (his treating physician). Pl.'s Mem. at 12 (emphasis and some capitalization omitted). More specifically, Plaintiff contends that the ALJ erred in giving less than controlling weight to the opinion of Dr. Boules. Id. at 12-14. Plaintiff alleges that "[t]he ALJ's reason for rejecting Dr. Boules' opinion was conclusory and does not provide the requisite good cause for rejecting her opinion" and that "[t]he ALJ failed to cite to any medical evidence in support of his findings." Id. at 14. Plaintiff also argues that Defendant cannot provide "post hoc justifications for the ALJ's failure to provide the requisite good cause for rejecting Dr. Boules' opinion." Id.

Responding, Defendant asserts that "[a]fter reviewing Dr. Boules' opinion, the ALJ[] assigned it limited weight because the opinion was not grounded on observable clinical signs and was inconsistent with the medical evidence of record." Def.'s Mem. at 8 (citations omitted). Defendant contends that "[t]he ALJ correctly noted that Dr. Boules' opinion was conclusory and speculative" and that "Dr. Boules' failure to provide objective findings to support [her] opinion is sufficient reason for the ALJ to give [it] limited

7

weight[.]" Id. Finally, Defendant argues that its "citation to additional record evidence to support the ALJ's findings and rationale does not amount to impermissible 'post-hoc rationalization.'" Id. at 10. Instead, Defendant contends that it "is not advancing a finding or rationale the ALJ did not provide in his [D]ecision but is instead pointing to the existing record to show the [C]ourt additional support for the finding and rationale articulated by the ALJ." Id. at 12.

**B.  Applicable Law**[7]

"Medical opinions are statements from [physicians or other] acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Acceptable medical sources include licensed physicians, licensed psychologists,

---

[7]  On January 18, 2017, the SSA revised the Rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844, 5,844 (January 18, 2017); see also 82 Fed. Reg. 15,132 (Mar. 27, 2017) (amending and correcting the final Rules published at 82 Fed. Reg. 5,844). Although Plaintiff filed his SSI application before the new Rules went into effect, his DIB application was filed after they did. The parties agree that the older Rules (giving controlling weight to a claimant's treating physician) apply to Plaintiff's claims. See Pl.'s Mem. at 12-13 (citing case law decided under the older Regulations); Def.'s Mem. at 6-7 (citing older Regulations). To the extent there is a question about which rules apply here, even applying the more favorable "controlling weight" rules result in an affirmance, so there is no need to determine definitively which rules apply in this unique situation.

8

licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1502(a).[8]

The Regulations establish a hierarchy among medical opinions that provides a framework for determining the weight afforded each medical opinion. See 20 C.F.R. § 404.1527. Essentially, "the opinions of a treating physician are entitled to more weight than those of a consulting or evaluating health professional," and "[m]ore weight is given to the medical opinion of a source who examined the claimant than one who has not." Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1259, 1260 n.5 (11th Cir. 2019). Further, "[n]on-examining physicians' opinions are entitled to little weight when they contradict opinions of examining physicians and do not alone constitute substantial evidence." Id. at 1260 (citing Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. § 404.1527(c)(2)-(5); see also 20 C.F.R. § 404.1527(f); Walker v. Soc. Sec. Admin., Comm'r, 987 F.3d 1333, 1338 (11th Cir. 2021) (citation omitted); McNamee v.

---

[8] For claims filed on or after March 27, 2017, acceptable medical sources also include licensed audiologists, licensed Advanced Practice Registered Nurses, and licensed Physician Assistants. 20 C.F.R. § 404.1502(a)(6)-(8).

9

Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citation omitted) (stating that "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists").

With regard to a treating physician,[9] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c)(2). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the

---

[9] A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1527(a)(2).

treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Simon, 7 F.4th at 1104 (citation omitted); Walker, 987 F.3d at 1338 (citation omitted); Schink, 935 F.3d at 1259; Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1305 (11th Cir. 2018) (citation omitted); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. Walker, 987 F.3d at 1338; Schink, 935 F.3d at 1259; Hargress, 883 F.3d at 1305; Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An ALJ is required to consider every medical opinion. See 20 C.F.R. § 404.1527(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981) (citation omitted); see also 20

11

C.F.R. § 404.1527(c)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," <u>Winschel v. Comm'r of Soc. Sec.</u>, 631 F.3d 1176, 1179 (11th Cir. 2011) (citing <u>Sharfarz</u>, 825 F.2d at 279); <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1212 (11th Cir. 2005); <u>Lewis</u>, 125 F.3d at 1440. "It is the responsibility of the agency, not the reviewing court, to supply the justification for its decision and to sufficiently explain the weight it has given to obviously probative exhibits." <u>Simon</u>, 7 F.4h at 1105 (quotation and citations omitted).

**C.   Analysis**

Dr. Boules has been Plaintiff's primary care physician since June 19, 2017. Tr. at 628; <u>see also</u> Tr. at 808-18 (June 19, 2017 medical record). Dr. Boules primary focus with Plaintiff is treating his HIV infection. She also refers Plaintiff to other medical providers when necessary for more specialized treatment for Plaintiff's other physical ailments <u>See, e.g.</u>, Tr. at 713 (March 19, 2018 record referring Plaintiff to "colorectal again"); Tr. at 767 (October 12, 2017 note referring Plaintiff to mental health); Tr. at 815 (June 19, 2017 record referring Plaintiff to a hematologist and a podiatrist).

On July 7, 2018, Dr. Boules completed a Physical RFC Questionnaire. <u>See</u> Tr. at 628-32. In the Questionnaire, Dr. Boules indicated that Plaintiff's prognosis is "unpredictable," and Plaintiff's symptoms include "painful, ankles, knees, [and] back, wrists." Tr. at 628. Dr. Boules further wrote that Plaintiff's

12

pain is "8/10 pain score" and identified the clinical findings as "moderate RROM[10] of all joints secondary to pain, gout." Tr. at 628. She further noted that Plaintiff's side effects from medications include "drowsiness, dizziness, [and] nausea"; Plaintiff's impairments lasted or can last at least twelve months; he is not a malingerer; and Plaintiff does not have any emotional factors contributing to the severity of his symptoms or functional limitations. Tr. at 628-29. When asked if there are any psychological conditions affecting Plaintiff's physical condition, Dr. Boules checked "[d]epression" and "[a]nxiety." Tr. at 629. Dr. Boules also checked "[c]onstantly" when asked how often during a typical workday Plaintiff's experience of pain or other symptoms affect Plaintiff's attention and concentration during a typical workday. Tr. at 629.

Dr. Boules went on to note Plaintiff could: walk one city block without rest or severe pain; could sit 1 hour and stand 15 minutes at one time; could stand/walk for less than 2 hours and sit about 4 hours total in an 8-hour workday; and needs included periods of walking around during an 8-hour working day, walking every 15 minutes for 15 minutes. Tr. at 629-30. Dr. Boules opined that Plaintiff does not need a job permitting him to shift positions at will but needs a job allowing him to take unscheduled breaks occurring every 15 minutes for 15-30 minutes. Tr. at 630. She also circled "[y]es" indicating Plaintiff's legs will need to be elevated and he must use a cane or other assistive

---

[10] RROM likely stands for Reduced Range of Motion.

13

device when standing/walking. Tr. at 630.

When asked to opine how many pounds Plaintiff could lift and carry in a competitive work environment, Dr. Boules checked as follows: rarely less than 10 pounds; never 10, 20, or 50 pounds. Tr. at 630. She also noted Plaintiff could occasionally look down (sustained) flexion of neck and turn head right or left; and could rarely look up or hold head in static position. Tr. at 631. As for certain activities, Dr. Boules stated Plaintiff could never twist, stoop (bend), crouch/squat, or climb ladders, and Plaintiff could occasionally climb stairs. Tr. at 631. She also positively identified that Plaintiff has significant limitations with reaching, handling, or fingering. Tr. at 631.[11]

Dr. Boules indicated Plaintiff's impairments would produce "good" and "bad" days, and he would miss more than 4 days because of his impairments or treatment. Tr. at 631. She further indicated Plaintiff would be unable to maintain a regular work schedule because of pain. Tr. at 632. Finally, when asked if Plaintiff would be unable to maintain a regular work schedule because of side effects of medication and if Plaintiff would have to lie down at unpredictable times during the day because of pain, Dr. Boules circled "[y]es." Tr. at 632.

---

[11] Dr. Boules wrote the following percentage of time Plaintiff could use hands/fingers/arms for certain activities: 20% for (left and right) hands in grasping, turning, or twisting objects; 20% for (left and right) fingers in fine manipulations; and 10% in (left and right) arms in reaching (including overhead). Tr. at 631.

14

In the context of reviewing the various medical opinions of record, the ALJ stated as follows:

> [Plaintiff's] RFC is supported by images confirming osteoarthritis in the right foot and ankles, mild degenerative joint disease in the right knee, pes planus and plantar calcaneal exost[]osis in the right and left foot with findings of limited range of motion in the right knee and ankle, decreased muscle strength in the right lower extremities, tenderness in both plantar medial heels, and tenderness over the dorsum of the right foot joints and first metatarsophalangeal joint and acute periods of pedal edema in the left extremity and a slow gait. [Plaintiff] was prescribed a cane for ambulation. Otherwise, musculoskeletal and neurological examinations were normal. No surgery or physical therapy was required. H[IV] infection is under control[] with highly active antiretroviral therapy (HAART), when he is compliant with treatments. Hypertension and dyslipidemia are controlled with medications, when he is complaint. Cardiovascular and respiratory examinations were normal. Recent treatment notes in 2019 show his deep vein thrombosis and lymphedema has been resolved. Overall, his physical impairments [are] essentially controlled with the mediations. Medical evidence does not suggest greater exertional or non[-]exertional limitations. Although [Plaintiff] alleged disabling physical impairments, he remained functional and acknowledged the ability to perform a robust range of routine activities of daily living independently. [Plaintiff] remained capable of performing significant work-related activities, and showed a physical capacity for activities consistent with a range of sedentary work.

Tr. at 31.

Directly after this finding, the ALJ assigned two different weights to Dr. Boules' opinions. See Tr. at 31-32. He first assigned "great weight" to Dr. Boules' opinion "prescribing [Plaintiff] a quad cane" as "[t]he need for a cane is supported by the impairments, and [Plaintiff]'s medical history." Tr. at 31 (citing Exhibit 12F (located at Tr. at 705)). The ALJ then assigned "limited

15

weight" to Dr. Boules' opinions regarding the RFC Questionnaire completed in July 2018. Tr. at 31-32; see also Tr. at 628-32. While assigning "limited weight," the ALJ found that Dr. Boules' opinion was "conclusory, speculative and not grounded on observable clinical signs in treatment or progress notes." Tr. at 32.

The ALJ did not err in assigning Dr. Boules' opinion (regarding the RFC Questionnaire) "limited weight." Tr. at 31-32.[12] Although the ALJ did not cite to specific exhibits, it is clear he reviewed all the evidence submitted, and his review necessarily included Dr. Boules' treatment and progress notes. See Tr. at 24-32. The ALJ found the doctor's opinions in the RFC Questionnaire were "not grounded on observable clinical signs in treatment or progress notes." Tr. at 32.

Consistent with the ALJ's findings, see supra p. 15, Dr. Boules' records reflect a lack of clinical observations for the extreme limitations assigned in the RFC Questionnaire. Although some medical records do indicate Plaintiff was positive for edema or his right wrist was swollen, see, e.g., Tr. at 712 (March 19, 2018), Tr. at 869 (June 27, 2019), and although Dr. Boules identified the clinical findings as "moderate RROM off all joints secondary to pain, gout," see Tr. at 628 (RFC Questionnaire), several physical examinations performed by the doctor were normal and indicate "no clubbing, cyanosis, edema, or deformity

---

[12] It does not appear that Plaintiff argues the ALJ erred in assigning "great weight" to Dr. Boules' opinion that he needs a cane. See Tr. at 31; see also Tr. at 705 (prescription).

16

noted <u>with normal full range of motion of all joints</u>." <u>See, e.g.</u>, Tr. at 870 (June 27, 2019); Tr. at 884 (April 11, 2019); Tr. at 899 (March 6, 2019)[13]; Tr. at 913 (November 26, 2018); Tr. at 940 (August 31, 2018);[14] Tr. at 952 (July 9, 2018); Tr. at 962 (June 12, 2018 ); Tr. at 725 (January 9, 2018); Tr. at 737 (December 13, 2017); Tr. at 746 (November 6, 2017); Tr. at 756 (October 26, 2017); Tr. at 766 (October 12, 2017); Tr. at 786 (August 25, 2017) (emphasis added).[15] Some physical exams did not include a specific section for "extremities" or "musculoskeletal (MS)", but these exams otherwise appear largely normal. <u>See, e.g.</u>, Tr. at 925-26 (October 29, 2018).

Dr. Boules also noted in Plaintiff's more recent medical records that Plaintiff was "noncompliant" and later "very noncompliant" with his medications and had "a long h[istory] of non[]compliance with" taking his prescribed medications. Tr. at 877 (April 11, 2019 medical record); Tr. at 863 (June 27, 2019 medical record); <u>see also</u> Tr. at 919 (October 29, 2018 treatment record indicating Plaintiff "always takes his med[ication]s on and off for different excuses"); Tr. at 933 (August 31, 2018 note stating Plaintiff "did not take his [blood pressure] med[ication]s as usual"); Tr. at 956 (June 12, 2018

---

[13] The March 6, 2019 physical exam did note "General: mild pain/distress." Tr. at 898.

[14] The August 31, 2018 physical exam did indicate Plaintiff was unable to lay flat or sit for long time. Tr. at 940.

[15] Some of these physical exams note Plaintiff's subjective complaints (about body aches) and that he was wearing a right arm brace. <u>See, e.g.</u>, Tr. at 899, 940, 952, 962.

17

record stating Plaintiff had not been taking his blood pressure medicine as he should be). On the same day (July 9, 2018) Dr. Boules completed the RFC Questionnaire, she also noted in the medical records that Plaintiff's "pain [was] under control with med[ication]s" after he resumed taking them. Tr. at 947.

In short, Dr. Boules' own treatment notes do not support the extremely restrictive functional limitations that she assigned in the RFC Questionnaire. Additionally, the ALJ incorporated Dr. Boules' prescription of a cane into Plaintiff's RFC. See Tr. at 24; see also Tr. at 705.

As to Plaintiff's contention that the ALJ's reasons were too conclusory, although they could have been more detailed and explicit, the comparison of Dr. Boules' notes (and the rest of the medical evidence) with her opinion contained in the RFC Questionnaire leads to the obvious[16] conclusion that the ALJ's reasons for discounting the opinion were adequate and supported by substantial evidence. See Tr. at 31-32. The ALJ did not err in his treatment of Dr. Boules' opinions.

## V.   Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**ORDERED**:

---

[16]   Oftentimes, it is not so obvious when an ALJ does not provide more detailed reasons for discounting opinions. See Simon, 7 F.4th at 1107-08. In those cases, reversal and remand is often appropriate. But here, remand would serve no useful purpose.

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), and pursuant to § 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on September 27, 2021.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

keh
Copies:
Counsel of Record